**In re Viraf Eruch BHARUCHA and Rashana Viraf Bharucha, Debtors.**

**Bankruptcy No. 89–02780–TUC–LO.**

United States Bankruptcy Court,
D. Arizona.

Feb. 22, 1990.

Eric Sparks, Seefeldt, Sparks & Neal, Tucson, Ariz., for debtors.

Clifford B. Altfeld, Leonard & Felker, P.C., Tucson, Ariz., for trustee.

Les Von Eberstein, Tucson, Ariz., trustee.

## OPINION AND ORDER

LAWRENCE OLLASON, Bankruptcy Judge.

The captioned case came before the court pursuant to the Trustee's motion for turnover of funds and objection to exemption of Individual Retirement Accounts ("IRAs") and an Arizona State Pension listed in the debtors' schedules. Debtors claim that their IRAs, totalling $35,005, and their pension, in the amount of $12,000, are exempt under A.R.S. sections 33–1126 and 1121, respectively. There are no material fact issues, and the matter has been submitted on the pleadings.

The debtors' claim of exemption for their IRAs is grounded upon A.R.S. section 33–1126(B), which states:

Any money or other assets payable to a participant or beneficiary from, or any interest of any participant or beneficiary in, a retirement plan which is qualified under sections 401(a), 403(a), 403(b), 408 or 409 of the United States internal revenue code of 1986, as amended, shall be exempt from any and all claims of creditors of the beneficiary or participant. This section shall not apply to any of the following:

1. An alternate payee under a qualified domestic relations order, as defined in section 414(p) of the United States internal revenue code of 1986, as amended.

2. Amounts contributed within 120 days before a debtor files for bankruptcy.

3. The assets of bankruptcy proceedings filed before July 1, 1987.

The interest of any and all alternate payees shall be exempt from any and all claims of any creditor of the alternate payee.

Although debtors' IRAs qualify under section 408 of the Internal Revenue Code, the Trustee argues that the Arizona exemption is preempted by the Employee Retirement Income Security Act ("ERISA") plans, 29 U.S.C. section 1001 *et seq.* The ERISA preemption provision, 29 U.S.C. section 1144(A), provides:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

If the Trustee is correct, and Arizona's IRA exemption is preempted by ERISA, then the IRAs are property of the estate and the funds can be disbursed to credi-

tors. Under section 1144(A), ERISA supersedes state laws that relate to a plan within 29 U.S.C. section 1003(a) which is not also among those listed in section 1003(b). Subsection (b) excepts governmental plans, church plans, and plans purposed solely upon compliance with worker's compensation, unemployment compensation, or disability insurance laws. Section 1003(a) states:

> Except as provided in subsection (b) of this section and in sections 1051, 1081, and 1101 of this title, this subchapter shall apply to any employee benefit plan if it is established or maintained—
>
> (1) by any employer engaged in commerce or in any industry or activity affecting commerce; or
>
> (2) by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; or
>
> (3) by both.

29 U.S.C. section 1002(4) and (5) define "employer" and "employee organization" broadly, but consistent with their common meanings.

Federal preemption and this state's decision to opt out of the federal exemptions pursuant to 11 U.S.C. section 522(b)(1), *see* A.R.S. 33–1133(B), have promulgated oxymoronic results in litigation concerning claims of exemption for ERISA plans. Notwithstanding that Congress and the Arizona Legislature have enacted exemptions for plans within ERISA, courts considering the issue have concluded that no such exemption exists in this state. Those courts reasoned that Arizona's exemption does not apply because 29 U.S.C. section 1144 preempts state law, and that the federal exemption, 11 U.S.C. section 522(d)(10)(E), does not apply because Arizona opted out. *See In re Hirsch,* 98 B.R. 1 (Bankr.Ariz.1988); *In re Siegel,* 105 B.R. 556 (D.Ariz.1989). These cases do not, however, control the analysis applicable to IRAs: "This appeal does not concern individual retirement accounts (IRA) and the court has made no determination respecting such an account." *Siegel,* 105 B.R. at 564, n. 5.

It is nevertheless clear that mere IRA nomenclature is insufficient to escape the scrutiny required by ERISA and its preemption provision. An IRA falling within any of the various definitions in 26 U.S.C. section 408 may still be within the definition of an ERISA plan. *See In re Flindall,* 105 B.R. 32 (Bankr.Ariz.1989) ("these [individual retirement] accounts .... are qualified ERISA employee benefit plans"). Whether an IRA, or any other type of pension, is within ERISA must thus be determined from application of federal law to the facts of each case. The operative test contained in section 1003(a) focuses on how the plan is established or maintained. Therefore, the character of a contribution remains unchanged despite any subsequent "rollover" or other alteration in the nature of a plan. If a contribution is within ERISA when made, the state law exemptions are preempted and will remain so. Similarly, if the contributions are not within ERISA, the state law exemptions are not preempted.

An appropriate test would first inquire whether an employer or employee organization has established or maintained the plan, and if so, whether any of the exemptions or exceptions contained in sections 1003(b), 1051, 1081, or 1101 apply. The IRAs at issue here were established and maintained by the debtors individually through their own contributions rather than by an employer or employee organization. Therefore, they are not within section 1003(a) and the state law exemption is not preempted by ERISA.

Debtors also claim an exemption for their Arizona State Pension. The statute creating that pension makes it exempt. *See* A.R.S. section 38–762 *and* A.R.S. section 33–1133 (other exemption laws not displaced). Although described in section 1003(a), that pension falls outside of ERISA and ERISA's preemption provision because it is a governmental plan within the meaning of 29 U.S.C. section 1003(b).

The court's conclusion herein offends neither *Mackey v. Lanier Collections Agency and Services,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), nor the Congres-

sional purpose of ERISA preemption, nor the public policy against abuse of the bankruptcy laws. *Mackey* holds only that ERISA preempts state law relating to employee benefit plans "covered by the statute." The debtors in this case claim no exemption for any assets contemplated by ERISA.

ERISA's preemption provision was prompted by recognition that employers and employee organizations involved in interstate commerce would otherwise encounter prohibitive complexity in establishing and maintaining employee benefit plans. A patchwork scheme of regulation from state to state would introduce considerable inefficiencies into benefit program operation, leading those employers with existing plans to reduce benefits, and those without such plans to refrain from adopting them. Preemption insures that the administrative practices of a benefit plan will be governed by only a single set of regulations. *Ft. Halifax Packing Co., Inc. v. Coyne,* 482 U.S. 1, 8, 107 S.Ct. 2211, 2221, 96 L.Ed.2d 1, 9 (1987). These concerns are absent where, as here, no employer or employee organization is involved, and where interstate commerce is not affected.

Finally, Arizona's IRA exemption scheme avoids criticism based on the observation that bankruptcy laws are intended to allow "fresh starts" rather than "head starts." A.R.S. section 33–1126(b) allows an exemption only for an IRA qualified by the Internal Revenue Code, which generally limits IRA contributions to $2,000 annually, and to smaller amounts for individuals with higher incomes. The statute does not permit massive wealth retention beyond the reach of creditors. Public policy favors retirement planning, and it is not served when a debtor becomes a public charge for the benefit of creditors.

Therefore, and based upon the foregoing,

IT IS ORDERED overruling the Trustee's objection to the debtors' claims of exemption, and denying the Trustee's motion for turnover.