**In re Abdul W. KAZI, M.D., and Samina W. Kazi, Debtors.**

**Stephen R. CLARK, Trustee, Movant,**

**v.**

**Abdul W. KAZI, M.D., and Samina W. Kazi, Debtors/Respondents.**

**Bankruptcy No. BK 90–30166.**
**Adv. No. 90–0164.**

United States Bankruptcy Court,
S.D. Illinois.

Feb. 4, 1991.

**982**

Laura Grandy, Belleville, Ill., for trustee Clark.

Kevin Richter, Belleville, Ill., for debtors.

Timothy Hayes, St. Louis, Mo., for Blunt, Ellis & Loewi.

## MEMORANDUM AND ORDER

KENNETH J. MEYERS, Bankruptcy Judge.

Abdul W. Kazi, M.D. and Samina W. Kazi, husband and wife, filed a joint bankruptcy petition under Chapter 7 of the Bankruptcy Code on February 28, 1990. Dr. Kazi is the sole shareholder and director of a professional corporation known as Abdul W. Kazi, M.D., Ltd., and is a participant in the Abdul Kazi, M.D., Ltd. Money Purchase Pension Plan and the Abdul Kazi, M.D., Ltd. Profit Sharing Plan. Debtors filed their original schedules on March 15, 1990 and listed as exempt $430,-000.00 in tax-qualified "pension trusts." On May 18, 1990, debtors filed an amendment to their schedules, additionally claiming as exempt $14,000.00 in an individual retirement account ("IRA") owned by Dr. Kazi and $11,000.00 in an IRA owned jointly by both debtors. No objections to exemptions were filed within the time limits prescribed by Bankruptcy Rule 4003(b). However, on July 19, 1990, Blunt, Ellis & Loewi, a major unsecured creditor, filed objections to exemptions, claiming that debtors are not entitled to exempt either the funds in the pension and profit sharing plans or the funds in the IRAs. Debtors filed a motion to strike those objections on the basis that they were not timely filed.

The Chapter 7 Trustee, who likewise failed to timely object to debtors' exemptions, filed a complaint for turnover on August 2, 1990 requesting, among other things, that debtors be ordered to turn over all funds held in the pension and profit sharing plans, as well as all funds held in the IRAs. Debtors filed a motion to dismiss the complaint,[1] claiming that the funds in question are not property of the estate, and further claiming that even if said funds do constitute property of the estate, debtors are entitled to exempt the funds pursuant to Ill.Rev.Stat. ch. 110, ¶ 12–1006(a).

---

**1.** At the hearing on this matter, all parties agreed that debtors' motion to dismiss involved matters outside the pleading and as such, should be treated as a motion for summary judgment. *See* Fed.R.Civ.P. 12(b) and Bankruptcy Rule 7012(b).

## I. Property of the Estate: Section 541 of the Bankruptcy Code

### A. ERISA as "Applicable Nonbankruptcy Law"

Section 541 of the Bankruptcy Code defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Thus, property becomes part of the bankruptcy estate regardless of any restrictions that may have been placed on its transfer. 11 U.S.C. § 541(c)(1). An important exception to this rule is found in section 541(c)(2), which provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2). At issue in the present case is the meaning of the phrase "applicable nonbankruptcy law." Debtors contend that the restrictions against assignment, required by the Employee Retirement Income Security Act ("ERISA") and contained in both Dr. Kazi's pension and profit sharing plans,[2] are "enforceable under applicable nonbankruptcy law," (i.e., enforceable under ERISA), and that the plans are therefore excluded from the bankruptcy estate. Blunt, Ellis & Loewi, as well as the Trustee, contend that "applicable nonbankruptcy law" refers only to state spendthrift trust law, and that Dr. Kazi's pension and profit sharing plans may be excluded from the bankruptcy estate only if they qualify as spendthrift trusts under Illinois law.

The majority of courts clearly support the latter position. Indeed, "[v]irtually every circuit that has considered the question has agreed that the debtor's interest in an ERISA pension or profit sharing plan is included in the bankruptcy estate unless the debtor's interest in the plan is considered a spendthrift trust under state law." In re Kincaid, 917 F.2d 1162, 1166 (9th Cir.1990) (citations omitted). See also In re Swanson, 873 F.2d 1121, 1123 (8th Cir.1989); In re Lichstrahl, 750 F.2d 1488, 1490 (11th Cir.1985); In re Graham, 726 F.2d 1268, 1270–73 (8th Cir.1984); Matter of Goff, 706 F.2d 574, 580 (5th Cir.1983). While the Seventh Circuit has not specifically addressed this issue, the Seventh Circuit did note, in In re Perkins, 902 F.2d 1254 (7th Cir.1990), that "[t]he legislative history of § 541(c)(2) indicates that Congress enacted the provision in order to exempt spendthrift trusts from the debtor's estate." Id. at 1256 n. 1. Likewise, a number of lower courts have held that the phrase "applicable nonbankruptcy law" refers only to state spendthrift trust law. See, e.g., In re Silldorff, 96 B.R. 859, 863–64 (C.D.Ill.1989); In re Balay, 113 B.R. 429, 436 (Bankr.N.D.Ill.1990). See also In re Tomer, 117 B.R. 391, 394 (Bankr.S.D.Ill. 1990); In re Wimmer, 121 B.R. 539, 540 (Bankr.C.D.Ill.1990).

Debtors urge this Court to reject the majority view and to adopt the position taken by the Fourth Circuit in In re Moore, 907 F.2d 1476 (4th Cir.1990). In Moore, the Fourth Circuit held that the phrase "applicable nonbankruptcy law" is not limited to state spendthrift trust law, and further held that "[b]ecause ERISA clearly prevents general creditors from reaching a debtor's interest in [an] ERISA-qualified trust, it constitutes 'applicable nonbankruptcy law' under which restrictions on the transfer of pension interests may be enforced." Id. at 1480. The court reasoned that had Congress intended for section 541(c)(2) to apply only to state spendthrift trusts, "the term 'spendthrift trust' would

---

2. ERISA requires that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). The Internal Revenue Code likewise provides that pension plans and trusts, in order to be tax-qualified, must contain a provision prohibiting the assignment or alienation of benefits. 26 U.S.C. § 401(a)(13). Dr. Kazi's plans include the required restriction in section 13, which provides that "[t]he interest of any person in this Plan or in the Trust or in any distribution to be made under the Plan shall not be assignable either by voluntary or involuntary assignment. . . ." See the Abdul Kazi, M.D., Ltd. Money Purchase Pension Plan and Trust and Profit Sharing Plan and Trust at section 13. The Internal Revenue Service has determined that both the pension plan and profit sharing plan are "qualified plans" under the Internal Revenue Code. See Exhibit B attached to debtors' Memorandum in Support of Debtors' Motion to Dismiss.

have appeared in the statute, rather than the phrase 'applicable nonbankruptcy law.'" *Id.* at 1478 (citations omitted). In reaching its conclusion, the court explained:

> In addition to being faithful to the language of both the Bankruptcy Code and ERISA, this conclusion furthers ERISA's broader purpose of ensuring uniform treatment of pension benefits throughout the country. *See Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 15–17, 107 S.Ct. 2211, 2219–20, 96 L.Ed.2d 1 (1987). "ERISA was designed to ensure that substantive pension benefits not be subject to the vagaries of state law." *PPG Industries Pension Plan A v. Crews,* 902 F.2d 1148 (4th Cir.1990). Our holding ensures that the security of employee retirement benefits will not depend on the particularities of state spendthrift trust law. Were it otherwise, a state that did not recognize spendthrift trusts at all could nullify the anti-alienation provisions of ERISA—a result which is contrary to ERISA's preemptive force. *See* 29 U.S.C. § 1144(a).

*Id.* at 1480. *See also In re Lucas,* 924 F.2d 597 (6th Cir.1991) (LEXIS, Genfed library, U.S.App file) (agreeing with *Moore* ).

While the Court is mindful of the policy considerations underlying the Fourth Circuit's decision in *Moore,* the Court agrees with the majority view that Congress intended to exclude from the bankruptcy estate only those trusts that are recognized under state law as true spendthrift trusts. The Bankruptcy Code specifically provides that pension benefits may be *exempted,* 11 U.S.C. § 522(d)(10)(E), "clearly indicating that they were intended and assumed to be part of the estate." *In re Graham,* 726 F.2d at 1272. Indeed, "if § 541(c)(2) were construed to exclude retirement funds from the bankruptcy estate then the part of the Code which provides a limited federal exemption for these funds would be rendered meaningless." *In re Swanson,* 873 F.2d at 1124. The Court refuses to construe the Bankruptcy Code in this manner and instead favors an interpretation that gives effect to all of the provisions of the Code. *See Darling v. Bowen,* 878 F.2d 1069 (8th Cir.1989); *Green v. C.I.R.,* 707 F.2d 404 (9th Cir.1983) (court must strive to interpret language in one section of a statute consistently with the language of other sections and the statute as a whole.)

In addition, the legislative history to section 541(c)(2) suggests that "Congress had something very specific in mind with its facially broad reference to 'applicable nonbankruptcy law' as the benchmark for assessing the enforceability of trust restraints on alienation in bankruptcy." *Matter of Goff,* 706 F.2d at 581.[3] Specifically, the House Report provides, in relevant part:

> The Bill determines what is property of the estate by a simple reference to what interests in property the debtor has at the commencement of the case. This includes all interests ... whether or not transferable by the debtor.... The bill ... continues over [from the Act] the exclusion from property of the estate of the debtor's interest in a spendthrift trust *to the extent the trust is protected from creditors under applicable State law.*

H.R.Rep. No. 595, 95th Cong., 1st Sess. 175–76 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 6136 (emphasis added). The Senate Report similarly explains that section 541(c)(2) "preserves restric-

---

**3.** While the Fourth Circuit in *Moore* considered the statutory language of section 541(c)(2) unambiguous and the legislative history thus irrelevant, this Court finds that the reference to "applicable nonbankruptcy law" in section 541(c)(2) "is not so unequivocal as to preclude this court from considering its legislative history to determine if ERISA-qualified plans find an automatic safe harbor under § 541(c)(2)." *In re Balay,* 113 B.R. at 436. The Court in fact feels compelled to examine the legislative history since, as noted above, the inclusion of a federal exemption for pension benefits raises important questions about the "plain meaning" of section 541(c)(2). *See Horner v. Merit Systems Protection Bd.,* 815 F.2d 668 (Fed.Cir.1987); *Carlson v. C.I.R.,* 712 F.2d 1314 (9th Cir.1983) (legislative history must be consulted where statutory language ambiguous or rendered so by other inconsistent statutory language). *See also Continental Can Co., Inc. v. Mellon,* 825 F.2d 308 (11th Cir.1987) (court may consult legislative history when faced with various suggested interpretations of a statute).

tions on a transfer of a *spendthrift trust* ... enforceable [under] nonbankruptcy law." S.Rep. No. 989, 95th Cong., 2d Sess. 83, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5869 (emphasis added). Therefore, it is clear that Congress intended to exclude from the bankruptcy estate only those trusts recognized by state law as true spendthrift trusts. Based on this legislative history and in view of the inclusion of a federal exemption for pension and profit sharing plans, the Court finds that ERISA does not constitute "applicable nonbankruptcy law" as that phrase is used in section 541(c)(2). Accordingly, Dr. Kazi's plans constitute property of the estate unless they qualify as spendthrift trusts under Illinois law.

**B. Exclusion of Plans and IRAs under Illinois Statutory Law**

■ Debtors also contend that the pension and profit sharing plans, as well as the IRAs, are excluded from the bankruptcy estate by virtue of Ill.Rev.State. ch. 110, ¶ 12–1006(c). That section provides:

A retirement plan that is (i) intended in good faith to qualify as a retirement plan under the applicable provisions of the Internal Revenue Code of 1986, as now or hereafter amended, or (ii) a public employee pension plan created under the Illinois Pension Code, as now or hereafter amended, *is conclusively presumed to be a spendthrift trust under the law of Illinois.*

Ill.Rev.Stat. ch. 110, ¶ 12–1006(c) (emphasis added). Retirement plans are defined to include pension and profit sharing plans, as well as individual retirement accounts. *See* Ill.Rev.Stat. ch. 110, ¶ 12–1006(b)(1) & (3).

Blunt, Ellis & Loewi and the Trustee argue that paragraph 12–1006(c) is preempted by ERISA and is thus void. The court, however, finds it unnecessary to reach the ERISA preemption issue and holds instead that to the extent paragraph 12–1006(c) excludes from property of the estate a retirement plan that is not a true spendthrift trust, it frustrates the intent underlying section 541(c)(2) of the Bankruptcy Code, and is therefore invalid under the Supremacy Clause of the United States Constitution.

It is a fundamental principle that under the Supremacy Clause,[4] "state laws will be invalidated to the extent they are inconsistent with or contrary to federal laws." *In re Summers,* 108 B.R. 200, 204 (Bankr.S.D. Ill.1989). The Constitution expressly authorizes Congress to establish uniform laws "on the subject of bankruptcies throughout the United States." U.S. Const. art. 1, § 8, cl. 4. Therefore, any state law that is contrary to federal bankruptcy law, or that frustrates "the purposes and full effect" of the bankruptcy laws is invalid. *See In re Wimmer,* 121 B.R. at 543 (citations omitted). *See also Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971).

As discussed above, "the Congressional intent behind Section 541(c)(2) of the Bankruptcy Code is quite clear—only traditional spendthrift trusts are to be excluded from the bankruptcy estate." *In re Wimmer,* 121 B.R. at 543. The Illinois legislature, however, has chosen to define all tax-qualified retirement plans as spendthrift trusts, whether or not such plans have the attributes of a true spendthrift trust.[5] As explained by the Court in *In re Wimmer:*

---

**4.** The Supremacy Clause states, "This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every State shall be bound thereby, any thing in the Constitution or laws of any State to the contrary notwithstanding." U.S. Const. art. VI, cl. 2.

**5.** A true spendthrift trust is generally recognized as one "created to provide a fund for the maintenance of another while protecting the fund

against the intended beneficiary's improvidence or incapacity." *In re Silldorff,* 96 B.R. 859, 864 (C.D.Ill.1989) (citations omitted). The *Silldorff* court further described the characteristics of a spendthrift trust as follows:

To qualify as a spendthrift trust, the beneficiary thereof must show that he or she cannot alienate his or her interest therein and that he or she does not possess exclusive and effective control over distribution or termination of the trust. *In re Dagnall,* 78 B.R. 531, 534 (Bankr. C.D.Ill.1987). Of particular interest is the extent of the dominion and control which the beneficiary exercises over the plan's assets.

Illinois has sought to make, by means of a conclusive presumption, a goose into a duck, despite the fact that it does not walk, sound or look much like a duck. This is a clear misuse of a conclusive presumption.... A legislature may not employ conclusive presumptions to legislat[e] a fact which is at odds with actualities. That all ERISA qualified pension plans are spendthrift trusts is not necessarily or universally true, as attested by the myriad of cases finding pension plans not to be excluded from the bankruptcy estate. There is but one reason for the enactment of the Illinois statute. That is to exclude all pension plans of Illinois residents from the bankruptcy estate, whether or not those plans are true spendthrift trusts. This is a bold attempt to undermine Section 541(c)(2) of the Bankruptcy Code which cannot succeed.

*Id.* (citations omitted). The Court agrees. The use of a conclusive presumption in paragraph 12–1006(c) clearly frustrates the intent behind section 541(c)(2), and the Court accordingly finds that section of the Illinois statute invalid under the Supremacy Clause.[6]

The Court notes with interest another bankruptcy decision upholding the validity of a New York statute similar to paragraph 12–1006(c). *See In re Kleist*, 114 B.R. 366 (Bankr.N.D.N.Y.1990). However, in *Kleist*, the court expressed serious concerns with its result:

> In re Peterson, 88 B.R. 5, 7 (Bankr.D.Me.1988) (applying Illinois law); In re Strehlow, 84 B.R. 241, 244 (Bankr.S.D.Fla.1988) (applying Illinois law). It is also accepted that the settlor of the trust cannot establish the trust for his or her own benefit.
>
> *Id.*

**6.** Neither the Trustee nor Blunt, Ellis & Loewi has made an outright challenge to the constitutionality of Ill.Rev.Stat. ch. 110, ¶ 12–1006(c), and therefore, no certification was provided to the Attorney General pursuant to 28 U.S.C. § 2403(b). Additionally, the parties have the burden of ensuring compliance with section 2403. *See Kealey Pharmacy v. Walgreen Co.*, 761 F.2d 345, 350 n. 8 (7th Cir.1985).

The potential for abuse created by the New York legislature's use of a "conclusive presumption" in this context ... is further troubling. It allows debtors to retain the freedom to withdraw their funds, while simultaneously insulating those assets from creditors. The effect of this dichotomous treatment appears, unfortunately, to subvert the policy underlying the state spendthrift trust law, as well as the United States Bankruptcy Code's intent.

It is well-established that non-bankruptcy law will initially determine the debtor's interest in property, yet the question of what constitutes property of the estate is a federal question. Here, Congress has declared, through Code § 541(c)(2), that deference will be accorded to the respective state created boundaries defining spendthrift trusts. New York has exercised its prerogative by "bootstrapping," that is, statutorily placing certain property under the control of the debtor within the protection ordinarily provided only to trusts possessing traditional spendthrift qualities.

*Id.* at 369–70 (citations omitted). As stated by the court in *In re Wimmer*, "[i]t is essentially for those reasons that this Court reaches an opposite conclusion." *In re Wimmer*, 121 B.R. at 544.

The Court also notes that two other bankruptcy courts in Illinois have upheld the validity of paragraph 12–1006(c). *See In re Balay*, 113 B.R. 429 (Bankr.N.D.Ill. 1990); *In re Block*, 121 B.R. 810 (Bankr.C. D.Ill.1990).[7] For the reasons stated above,

**7.** In *In re Balay*, Judge Schwartz, in dicta, concluded that paragraph 12–1006(c) is valid, stating as follows:

> In sum, paragraph 12–1006(c) of the Illinois Act has adopted the trust attributes of ERISA as its own in defining what constitutes a spendthrift trust under Illinois law. Although a trust's tax qualified status under § 401(a)(13) of the IRC only depends on its anti-alienation provision, to deem such trusts spendthrift is not an abrogation of the common law of Illinois of spendthrift trusts. Rather, the Court views the Illinois Act as an attempt by the legislature to create a very narrow exception to Illinois spendthrift law applicable only to retirement plans that are tax qualified. Furthermore, it is reasonable

this court respectfully disagrees with those decisions.

### C. Exclusion of Plans and IRAs under Illinois Common Law

■ Dr. Kazi's pension and profit sharing plans and the IRAs may also be excluded from the bankruptcy estate if they qualify as spendthrift trusts under Illinois common law. However, it is clear, and indeed debtors appear to concede, that the plans and IRAs do not constitute spendthrift trusts under the common law of Illinois.

While Illinois recognizes the validity of spendthrift trusts, the trust may not be self-settled (*i.e.*, the settlor may not establish the trust for his own benefit), and "the beneficiary must not have any control over or right to a distribution from the trust." *In re Balay*, 113 B.R. at 437 (citations omitted). *See also In re Perkins*, 902 F.2d at 1257 n. 2; *In re Silldorff*, 96 B.R. at 864; *In re Dagnall*, 78 B.R. 531, 534 (Bankr.C.D.Ill.1987). "[A] number of courts have held that a self-employed professional or one who is employed by a professional corporation who owns a majority stock interest in the corporation will be deemed the settlor of the ERISA-qualified plan in which he is a participant." *In re Balay*, 113 B.R. at 437 (citing *In re Daniel*, 771 F.2d 1352 (9th Cir.1985); *In re Lichstrahl*, 750 F.2d 1488; *Matter of Goff*, 706 F.2d 574). In the present case, it is undisputed that Dr. Kazi is the sole shareholder and director of a professional corporation known as Abdul W. Kazi, M.D., Ltd., and is a participant in the pension and profit sharing plans established by that corporation. Clearly, the plans are self-settled, and for that reason alone, fail to qualify as spendthrift trusts.

Additionally, Dr. Kazi's ability to control the plans' assets is evidenced by the fact that he is the trustee of both plans, and is

further evidenced by the fact that he transferred $300,000.00 of plan funds to his personal account.[8] With regard to the IRAs, the Court assumes that, as with most IRA's, debtors can withdraw the funds at any time as long as they are willing to pay the current taxes plus a penalty on the withdrawn funds. In view of the degree of control debtors may exercise over the plans and IRAs, the Court can only conclude that neither satisfy the requirements for a spendthrift trust.

### II. *Debtors' Exemptions under Illinois Law*

#### A. Exemption for Retirement Plans

Having determined that the pension and profit sharing plans and the IRAs are property of the bankruptcy estate, the Court must next decide whether debtors are entitled to claim those assets as exempt. Debtors contend that they may exempt both the plans and IRAs pursuant to Ill.Rev.Stat. ch. 110, ¶ 12–1006(a), which provides, in part, as follows:

> A debtor's interest in or right, whether vested or not, to the assets held in or to receive pensions, annuities, benefits, distributions, refunds of contributions, or other payments under a retirement plan is exempt from judgment, attachment, execution, distress for rent, and seizure for the satisfaction of debts if the plan (i) is intended in good faith to qualify as a retirement plan under applicable provisions of the Internal Revenue Code of 1986. . . .

Ill.Rev.Stat. ch. 110, ¶ 12–1006(a).[9] Blunt, Ellis & Loewi and the Trustee object, contending that the Illinois exemption statute is preempted by ERISA. Debtors, in response, claim that the objections to exemptions were not timely filed and should therefore not be considered.

---

to assume that the Illinois legislature was fully aware of the judicial decisions voiding various state exemption statutes on the basis of ERISA's § 1144(a) preemptive language. *In re Balay*, 113 B.R. at 442–43.

**8.** Dr. Kazi's transfer of funds to his personal account was the subject of controversy in a motion to dismiss filed by the U.S. Trustee, and

is, as noted, relevant in determining Dr. Kazi's "dominion and control" over the plans' assets, but is otherwise immaterial with regard to the issues now before this Court.

**9.** As previously noted, "retirement plan" includes pension and profit sharing plans and individual retirement accounts. Ill.Rev.Stat. ch. 110, ¶ 12–1006(b)(3).

## B. Timeliness of Objections

Section 522(*l*) of the Bankruptcy Code provides:

The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section. If the debtor does not file such a list, a dependent of the debtor may file such a list, or may claim property as exempt from property of the estate on behalf of the debtor. *Unless a party in interest objects, the property claimed as exempt on such list is exempt.*

11 U.S.C. § 522(*l*) (emphasis added). Rule 4003 sets forth the deadline within which objections must be filed:

The trustee or any creditor may file objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting of creditors held pursuant to Rule 2003(a) or the filing of any amendment to the list unless, within such period, further time is granted by the Court.

Bankr.R. 4003(b). In the present case, the meeting of creditors pursuant to 11 U.S.C. § 341(a) was noticed for and held on April 24, 1990. Neither Blunt, Ellis & Loewi nor the Trustee filed timely objections to the exemptions claimed by debtors, yet each party now contends that the objections which have been raised should be heard and determined by this Court. In support of their position, Blunt Ellis & Loewi and the Trustee offer the following arguments.

First, in an attempt to "extend" the deadline for objecting to exemptions, the objecting parties contend that the 341 meeting of creditors has not yet been concluded, and therefore, that the time period imposed by Bankruptcy Rule 4003 has not yet started to run. By separate order dated November 21, 1990, this Court has already ruled that the meeting of creditors was in fact concluded on April 24, 1990, and has denied the Trustee's request to reconvene that meeting. In light of the Court's ruling, the parties' contention that the deadline for objecting to exemptions has not yet started to run is obviously without merit.

Second, the Trustee and Blunt, Ellis & Loewi assert that debtors have "lumped" the pension plan funds and profit sharing plan funds under the term "Pension Trusts," and that no separate exemption has been claimed for the profit sharing plan. Apparently, the objecting parties believe that they have no duty to object to debtors' exemption in the profit sharing plan until that property has been specifically claimed as exempt. However, the amount claimed as exempt ($430,000.00) represents the total amount in both Dr. Kazi's pension and profit sharing plans, and "it is inconceivable ... that either the capable counsel for the Trustee or that of Blunt, Ellis & Loewi was in any way mislead [sic], especially in light of the detail provided at the 2004 hearing on these issues." *See* Second Supplement to Debtors' Memorandum in Support of Debtors' Motion to Dismiss at p. 2.

█ Third, the objecting parties contend that debtors have claimed a "conditional" exemption by stating on their schedules that the plans and IRAs are claimed as exempt "if said property is property of the estate." *See* Debtors' Schedule B–4 and Amendment to Schedules and Statements. The parties then argue that the duty to object to exemptions does not arise until the Court has made a determination that the assets in question are property of the estate. The Court disagrees. The cases cited by counsel for Blunt, Ellis & Loewi with regard to this issue are not directly on point, and more importantly, under Bankruptcy Rule 4003, it was the duty of any interested party to file timely objections to debtors' scheduled exemptions regardless of whether such exemptions may or may not be characterized as "conditional." Furthermore, the question of whether debtors may exempt retirement plans from the bankruptcy estate almost always requires a two-step analysis (do the plans constitute property of the estate and if so, may debtors claim them as exempt) that is usually made once objections to exemptions have been filed or a turnover action has been commenced. Surely the Trustee and counsel for Blunt, Ellis & Loewi are familiar with this analysis. Any argument that the obligation to object to exemptions has not

arisen because of the "conditional language" in which the exemption was claimed is, in sum, unsupported by existing case law and without merit.

■ Fourth, Blunt, Ellis & Loewi and the Trustee contend that objections which are not timely filed are not waived when debtors have actual notice of the objections prior to the expiration of the deadline set forth in Rule 4003(b). Blunt, Ellis & Loewi argues that in the present case, debtors were "repeatedly advised" that it objected to their intention to claim an exemption in the pension and profit sharing plans and IRAs, and that a substantial portion of the Rule 2004 examination held April 13, 1990 was devoted to attacking the "conditional exemption" claimed by debtors in the pension and profit sharing plans. Whether debtors had actual notice of the objections within the time period prescribed by Rule 4003(b), however, is irrelevant. Absent unusual or extraordinary circumstances not present in this case, "[o]bjections to exemptions *must be filed and must be in writing.*" 8 *Collier on Bankruptcy* ¶ 4003.04 at 4003–11 (15th ed. 1990) (emphasis added).

■ Fifth, Blunt, Ellis & Loewi contends that the objections it filed on July 19, 1990, though untimely, should nevertheless be considered since it did not receive notice of the amendment to debtors' list of exemptions until July 11, 1990. As previously noted, debtors amended their schedules on May 18, 1990 to add their IRAs to the list of property claimed as exempt. In conjunction with this argument, Blunt, Ellis & Loewi argues that the objections it filed are applicable to the pension and profit sharing plan exemptions as well, even though those exemptions were listed on debtors' original schedules and no timely objections were filed.

Rule 1009 provides that "[t]he debtor shall give notice of [any] amendment [to the schedules] to the trustee *and to any entity affected thereby.*" Bankr.R. 1009(a) (emphasis added). Debtors concede that Blunt, Ellis & Loewi was not given notice of the amendment, apparently because they did not consider that creditor an "affected entity." Blunt, Ellis & Loewi, a major unsecured creditor with a claim of $180,-000.00 (debtors' total unsecured claims equal $231,850.00), is clearly an entity affected by debtors' claim to an exemption worth approximately $25,000.00, and was therefore entitled to notice of the amendment filed by debtors on May 18, 1990. *See In re Woodson,* 839 F.2d 610, 615 (9th Cir.1988) (creditor holding 90 percent of the unsecured claims against debtor was an "affected entity" entitled to notice under Rule 1009). Accordingly, the Court will consider below the merits of the objections filed by Blunt, Ellis & Loewi on July 19, 1990, but only insofar as those objections relate to the IRAs. "[I]f the exemptions previously claimed have been finalized by the lack of a successful objection prior to the amendment, the new objections may go only to those exemptions affected by the amendment and may not reopen the propriety of all other exemptions claimed." 8 *Collier on Bankruptcy* ¶ 4003.04 at 4003–9 (15th ed. 1990). *See also In re Payton,* 73 B.R. 31, 33 (Bankr.W.D.Tex.1987); *Matter of Gullickson,* 39 B.R. 922, 923 (Bankr.W. D.Wis.1984).

■ Finally, the Trustee and Blunt, Ellis & Loewi contend that paragraph 12–1006(a) is invalid and that debtors are therefore not entitled to their claimed exemptions, despite the lack of any timely objections. More specifically, they argue that paragraph 12–1006(a) is preempted by ERISA and thus, no state law exists on which debtors may base their exemptions. The objecting parties, in effect, ask that the Court fully examine the merits of debtors' exemptions when no timely objections have been filed. This the Court will not do. Debtors need only establish a good faith statutory basis for claiming their exemptions. For the reasons set forth below, the Court finds that debtors have done so in the present case.

■ Rule 4003(b) expressly requires that objections to exemptions be filed within thirty days after the conclusion of the meeting of creditors or the filing of any amendment to the list of exemptions. Section 522(*l*) of the Bankruptcy Code and

Rule 4003 "clearly place the burden on the creditor [or trustee] of taking timely affirmative action." *In re Grossman,* 80 B.R. 311, 313 (Bankr.E.D.Pa.1987). Moreover, under Bankruptcy Rule 9006(b)(3), courts have no discretion to enlarge 4003(b)'s time limit unless the trustee or another interested party requests an extension within the original thirty day period.[10]

Relying on the strict time limitations established by Rules 4003(b) and 9006(b)(3), a number of courts have held that failure to timely object results in the allowance of the exemption as claimed with no examination of the merits of the exemption. *See, e.g., In re Bradlow,* 119 B.R. 330, 331 (Bankr.S. D.Fla.1990); *In re Lattimore,* 81 B.R. 18, 20 (Bankr.E.D.Mo.1988); *In re Grossman,* 80 B.R. at 312–15. Conversely, other courts have adopted the position urged by the Trustee and Blunt Ellis & Loewi, namely, that an objection is unnecessary if the claimed exemption is invalid under existing law. *See, e.g., In re Stutterheim,* 109 B.R. 1010, 1012 (D.Kan.1989); *In re Owen,* 74 B.R. 697, 699 (Bankr.C.D.Ill.1987); *In re Bennett,* 36 B.R. 893, 895 (Bankr.W.D.Ky. 1984). This approach, which requires courts to fully examine the merits of the claimed exemption, is based on the theory that debtors should not be permitted to engage in "exemption by declaration." As explained by the *Bennett* court:

> What we have chosen to call "exemption by declaration" is unacceptable for broader policy reasons. The obvious result of such a rule would be to encourage a debtor's claim that *all* of his property is exempt, leaving it to the bankruptcy trustee and creditors to successfully challenge that claim. We would revert to the law of the streets, with bare possession constituting not nine, but ten, parts of the law; orderly administration of estates would be replaced by uncertainty and constant litigation if not outright anarchy.

*In re Bennett,* 36 B.R. at 893 (emphasis in original).

This Court, however, finds that a third, middle-ground approach is the appropriate method for analyzing objections that are not timely filed. This approach does not require a full examination of the claimed exemption, "but only a determination of whether there is a good-faith statutory basis for it." *In re Peterson,* 920 F.2d 1389, 1393 (8th Cir.1990). As explained by the Sixth Circuit:

> The clear import of [Rule 4003(b)] and of section 522(1) is that objections to claimed exemptions must be made within thirty days after the creditors' meeting or any amendment, or they are waived. We do not mean by this to endorse "exemption by declaration"; there must be a good-faith statutory basis for exemption.... But where the validity of an exemption is uncertain under existing law ... the creditor cannot rest on his rights in the face of Rule 4003(b).

*Matter of Dembs,* 757 F.2d 777, 780 (6th Cir.1985) (citations omitted). "[R]equiring a debtor to show a good-faith statutory basis for the claimed exemption avoids the difficulties inherent in 'exemption by declaration' and best effectuates the policies underlying rule 4003(b)." *In re Peterson,* 920 F.2d 1389, 1393. Clearly, to allow a full-scale analysis of the merits of a claimed exemption where no timely objections have been filed would render Rule 4003(b) meaningless. While the Court agrees that the strict time limitations imposed by Rule 4003(b) should not be applied to provide debtors with an undeserved windfall, "[t]he dangers of 'exemption by declaration' ... are not significant enough to warrant permitting a trustee another bite at the debtor's apple where the debtor has claimed certain property exempt in good faith." *Id.*

Debtors base their exemptions in the pension and profit sharing plans and IRAs on Ill.Rev.Stat. ch. 110, ¶ 12–1006(a), cited above. The Trustee and Blunt, Ellis & Loewi each contend that paragraph 12–

---

**10.** Rule 9006 provides, in part, that "[t]he court may enlarge the time for taking action under Rules ... 4003(b) ... only to the extent and under the conditions stated in those rules." Bankr.R. 9006(b)(3). Rule 4003(b), in turn, requires that any request for extension of time to object to exemptions be made within the original thirty day period.

1006(a) is preempted by ERISA, and that debtors accordingly have no statutory basis for their claimed exemptions.[11] A majority of courts considering this issue have indeed held that any state statute exempting ERISA-qualified retirement plans is preempted by ERISA. *See, e.g., In re Alagna,* 107 B.R. 301 (Bankr.D.Colo.1989); *In re Flindall,* 105 B.R. 32 (Bankr.D.Ariz. 1989); *In re Gaines,* 106 B.R. 1008 (Bankr. W.D.Mo.1989); *In re Komet,* 104 B.R. 799 (Bankr.W.D.Tex.1989); *In re Wimmer,* 121 B.R. at 543. The majority view is based on the language of ERISA itself and on the Supreme Court's decision in *Mackey v. Lanier Collections Agency and Service,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988).

ERISA provides, in relevant part, that "[e]xcept as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). In *Mackey,* the Supreme Court addressed two questions: (1) whether a Georgia statute prohibiting garnishment of an interest in an ERISA plan was preempted by ERISA, and (2) whether Georgia's general garnishment statute was preempted by ERISA. In holding that the antigarnishment provision was preempted and that the general garnishment statute was not, the Court reiterated its earlier ruling that a law "relates to" an employee benefit plan "if it has a connection with *or reference to* such a plan." *Mackey,* 108 S.Ct. at 2185 (emphasis in original) (citations omitted). The Court further noted that "[o]n several occasions ... we have reaffirmed this rule, concluding that state laws which make 'reference to' ERISA plans are laws that 'relate to' those plans...." *Id.* (citations omitted).

█ The majority view relies, in large part, on the broad language of *Mackey* cited above. There is an emerging minority view, however, construing the *Mackey* decision in a much narrower manner, and holding that state statutes exempting ERISA-qualified retirement plans are not necessarily preempted by ERISA. *See, e.g., In re Dyke,* 119 B.R. 536 (S.D.Tex. 1990) (holding that Texas statute exempting employee benefit plan was not preempted by ERISA); *In re Vickers,* 116 B.R. 149 (Bankr.W.D.Mo.1990) (disagreeing with majority view and holding that preemption of Missouri pension exemption statute would "modify and impair" Bankruptcy Code provision delegating to states the right to create their own bankruptcy exemptions); *In re Martinez,* 107 B.R. 378 (Bankr.S.D.Fla. 1989) (holding that Florida exemption statute not preempted since it does not attempt to regulate pension plans or change underlying purpose of ERISA); *In re Volpe,* 100 B.R. 840 (Bankr.W.D.Tex.1989), *aff'd,* 120 B.R. 843 (W.D.Tex.1990) (holding that Texas exemption statute is not preempted by ERISA since it does not purport to regulate the terms and conditions of an employee benefit plan). These cases suggest, at a minimum, that the law surrounding the preemption issue is not as well-settled as the Trustee and Blunt, Ellis & Loewi contend. Furthermore, this Court has not yet made any decision regarding the question of whether the Illinois exemption statute for retirement plans is or is not preempted by ERISA. Given this fact, and in light of the divergent views regarding the preemp-

---

**11.** In discussing whether the plans and IRAs constitute property of the estate, debtors state:

> Finally, it is important to note that we are arguing only that under state law the retirement plans and I.R.A.s constitute spendthrift trust[s] as specifically provided in Illinois Revised Statute Chapter 110 ¶ 12–1006 and not that the state exemption statute is not preempted by ERISA. The majority of cases have held that ERISA pre-empts the application of state law exemption.

Memorandum in Support of Debtors' Motion to Dismiss at pp. 5–6. The meaning of these statements is not clear. The Court can only assume that debtors do not concede that the Illinois exemption statute is preempted by ERISA, in light of their underlying argument that the same statute entitles them to their claimed exemptions. Indeed, debtors specifically state elsewhere that they have "clear grounds to claim as exempt the pension trust and IRAs. It is Blunt, Ellis & Loewi who are making the objection that has a questionable position...." Motion to Strike or Deny Blunt Ellis & Loewi's Objections to Debtors' Schedule B–4 at p. 4.

tion question, the Court concludes that debtors had a good faith statutory basis for their claimed exemptions.

In reaching this decision, the Court feels compelled to comment on the failure of the Trustee to file timely, written objections to debtors' exemptions. The Trustee has offered no explanation for his failure to do so, and indeed, a review of the record indicates that no reason exists.

It is elementary that one of the primary duties of a Chapter 7 trustee is to review the bankruptcy schedules and exemption claims filed by a debtor. It is also the duty of the trustee to protect the interests of the unsecured creditors and to maximize distribution to those creditors. Debtors in the present case listed as exempt $455,000.00 in "pension trusts" and IRAs. In view of the substantial amount of money involved and of the potential benefit to the bankruptcy estate, surely the Trustee must have known of the importance of ascertaining the validity of debtors' exemptions and if necessary, of filing timely objections. The resulting loss to creditors is obvious. In short, the Trustee's conduct in this case demonstrates a lack of diligence in the performance of his duties that is, at best, inexcusable.

C. Objection to Exemption of IRAs

 Blunt, Ellis & Loewi, as previously noted, did not receive notice of the amendment to debtors' schedules filed May 18, 1990, at which time debtors added the IRAs to their claimed exemptions. The Court will therefore consider Blunt, Ellis & Loewi's objection to exemptions only to the extent that those objections relate to the IRAs.

In short, Blunt, Ellis & Loewi contends that because paragraph 12–1006(a) is preempted by ERISA, debtors have no statutory basis for claiming their IRAs as exempt. This argument is wholly without merit. Even assuming *arguendo* that ERISA preempts paragraph 12–1006(a),

ERISA's preemption provision does not apply to IRAs.

ERISA defines "employee pension benefit plan" and "pension plan" to mean "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization...." 29 U.S.C. § 1002(2)(A). In addition, the regulations covering ERISA provide, in part, as follows:

(d) *Individual Retirement Accounts.* For purposes of Title I of the Act and this chapter, the terms "employee pension benefit plan" and "pension plan" shall not include an individual retirement account described in section 408(a) of the [Internal Revenue] Code, an individual retirement annuity described in section 408(b) of the Internal Revenue Code of 1954 ... and an individual retirement bond described in section 409 of the Code....

29 C.F.R. § 2510.3–2(d)(1) (1990). Clearly, "[s]ince an IRA is self-settled and not maintained by an employer or an organization, IRAs are simply not the type of accounts that fall under the ERISA legislation." *In re Laxson,* 102 B.R. 85, 89 (Bankr.N.D.Tex. 1989). Therefore, ERISA does not preempt paragraph 12–1006(a) with respect to debtors' IRAs. *See also In re Chadwick,* 113 B.R. 540 (Bankr.W.D.Mo.1990) (trustee's objection to debtor's IRA exemption based on federal preemption denied); *In re Martin,* 102 B.R. 639 (Bankr.N.D.1989) (IRAs outside preemptive scope of ERISA).[12]

Accordingly, for the reasons stated, the objections to exemptions filed by the Trustee and Blunt, Ellis & Loewi are OVERRULED. Debtors' motion to dismiss, construed as a motion for summary judgment, is GRANTED.

---

12. While a different result might be reached if the IRAs were established or maintained by an employer or employee organization, *In re Bharucha,* 115 B.R. 671 (Bankr.D.Ariz.1990), the IRAs in the present case appear to have been established and maintained by the debtors individually.