FRANK WASHBURN

*v.*

JAMES GOODHEART.

1. STATUTE—*strict construction—exemption law.* A statute exempting property from levy and sale, is not to be construed strictly, but so as to carry out the obvious intention of the legislature.

2. EXEMPTION—*statute construed as to team used, etc.* The words "used by the debtor in obtaining the support of his family," in the statute exempting "one yoke of oxen, or two horses in lieu thereof" not exceeding in value $200, being general, and restricted to no particular mode of use, are answered where the team is hired to others for a compensation which goes into the general fund to support the family, as well as where the debtor personally uses the same. But a team kept for pleasure is not within the letter or the spirit of the statute.

3. SAME—*waiver.* Where one, being indebted to another, agreed to turn over to him a stock of goods, and two horses and harness, and a wagon, out of which to pay such debt, and the creditor was to pay off an execution obtained by another creditor against the same debtor, or buy it and give time, but the team and harness were never delivered or demanded, and the execution was levied upon the team and harness, which was claimed as exempt, it was *held,* that the agreement to turn them over was not a waiver of the exemption.

4. SAME—*debtor may sell property.* Where property is exempt from execution, the debtor may sell, mortgage or pledge it, as he pleases, without making it subject to levy and sale under execution.

APPEAL from the Circuit Court of McLean county.

Mr. D. B. LUCAS, for the appellant.

Messrs. HUGHES & McCART, for the appellee.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

This was trespass, by appellant against appellee, for levying upon, as sheriff, and selling, a team of two horses and their harness, the property of appellant.

The levy and sale were by virtue of an execution issued upon a judgment in favor of John V. Farwell & Co., and against appellant, for some $400.

The principal question is, whether the property was exempt from execution. There is no objection to the sufficiency of the evidence to prove the exemption, on any other ground than that it is not shown that the property was personally used by appellant in obtaining the support of his family. Appellant had, shortly before the levy of the execution, been conducting a country store at Shirley, in McLean county, but at that time was residing in Bloomington, and was not engaged in any business. The horses were kept in his stable at Shirley, and he furnished their feed; and he had been in the habit of using them, or having them used, in hauling for himself when he had work of that kind for them, and when they were not thus used, they were driven by one Nelson, who took care of them, and employed them in such jobs of hauling, for compensation, as he or appellant could obtain—Nelson receiving one-half of the amount thus made, after deducting expenses, and appellant the other half.

When the team was levied upon, it was being used by Nelson in hauling potatoes, at Bloomington, under this arrangement.

Among other property exempt by statute from execution, it is provided, "when the debtor is the head of a family, and

resides with the same," there shall be exempt from execution, etc., " one yoke of oxen, or two horses in lieu thereof, used by the debtor in obtaining the support of his family, not exceeding in value $200, and the harness therefor, not exceeding in value $40." Rev. Stat. 1874, p. 499, §13. Appellee insists that this language should be construed strictly, and that the property, to be exempt, should be personally used by the debtor. This is contrary to the principle of construction applicable to such statutes. Such statutes are not to be construed strictly, but so as to carry out the obvious intention of the legislature in enacting them. *Good* v. *Fogg*, 61 Ill. 449.

It often happens that the head of a family is, by reason of physical infirmities, personally unable to take care of and use a team, and it is manifest, in such cases, the reason and policy of the law no less favor the exemption than when the head of a family is free of such misfortune. So, also, it is provided, " when the head of a family shall die, desert or not reside with the same, the family shall be entitled to and receive all the benefits and privileges which are in this act conferred upon the head of a family residing with the same." Rev. Stat. 1874, p. 499, § 15. It could hardly be contended that it was designed by the legislature that the delicate mother, or the helpless infant, should actually drive and use the team, in order to have the benefit of the exemption; and yet, the position contended for would seem to necessitate this, for no exception is made to the phraseology of the section in their favor.

The words " used by the debtor in obtaining the support of his family," are general, and restricted to no particular mode of use. They are answered when the team is hired to others for a compensation, which compensation goes into the general fund to support the family, as well as where the debtor himself goes with the team as its driver, and adds the earnings of his labor to that of the team.

A team kept for pleasure, merely, is not within either the letter or the spirit of the statute. The team must be kept and

used, in good faith, to contribute to the means of support of the family, but when it is thus kept and used, we do not consider it important by whom it is taken care of and used. In this matter, as in very many others, the act of the agent or servant is to be regarded as the act of the principal or master. The use is his use, whether by his own hands or by those of another.

The cases, referred to by appellee, in California and Iowa, were decided under statutes the phraseology of which was entirely different from that we have been considering, and we do not, therefore, regard them as pertinent.

The only other question to be considered is, did appellant waive his right to claim this property as exempt from execution?

The facts claimed by appellee to have this effect, are, in brief, these: Some time, perhaps a month or more before the levy of the execution, appellant, being indebted to Roush & Humphreys to the amount of $1000, agreed with them to turn over the stock of goods which he had in his store in Shirley, and the horses and harness levied upon, and a wagon, and they were, as he says, to protect him against this execution—or, as they say, to buy the execution and give him time. He turned over the stock of goods to them, and they placed a man in possession; but the horses and harness were not surrendered to them, nor did they ever demand their possession. Shortly after Roush & Humphreys obtained possession of the goods, appellant re-took them, and they then replevied them from him and had the execution levied upon the horses and harness and wagon.

We do not perceive how this agreement can be construed as a waiver of any right to claim the benefit of the exemption law. If the property was exempt from execution, then appellant was at liberty to sell it, or mortgage or pledge it as he pleased, without regard to the execution. *Vaughan* v. *Thompson,* 17 Ill. 78; *Cole* v. *Green,* 21 id. 104.

Appellant never agreed that the property should be seized

and sold on the execution; and Roush & Humphreys surely do not show a superior right to the property, when they never have had possession of it, and make no pretense that they have complied with the contract by which they were entitled to have its possession.

We think the judgment below wrong, and it must, therefore, be reversed, and the cause remanded.

*Judgment reversed.*