# Henry C. Gibson, et al., v. The People of the State of Illinois, for the use of A. F. Slonneger.

## Gen. No. 4,528.

1. EXEMPTION—*when judgment debtor does not waive.* While the defendant in an attachment has the right to obtain the return of the property levied upon by presenting a schedule within ten days after levy, yet his failure to do so does not preclude him after judgment in the suit from presenting his schedule within such statutory period and thereby regaining its return.

2. EXEMPTION—*how statute providing for, construed.* Statutes exempting property from levy and sale for the payment of debts are not to be strictly construed but should receive such construction as will carry out the obvious purpose of the legislature in enacting them to protect the debtors.

3. EXEMPTION—*when failure to present schedule does not bar.* The failure of a debtor to present his schedule within ten days after levy, as limited by statute, does not bar his right of exemption where the officer making the levy does not comply with the statute providing, among other things, that he shall deliver to such debtor a copy of the writ, with a notice endorsed thereon, signed by himself, notifying the debtor that he must file a schedule of his property within ten days.

4. FAIR CASH VALUE—*what not evidence of.* There is no presumption of law that the price which property brought at a forced sale is the fair cash market value thereof.

Action of debt upon bond. Appeal from the Circuit Court of Peoria County; the Hon. NICHOLAS E. WORTHINGTON, Judge, presiding. Heard in this court at the April term, 1905. Reversed and remanded. Opinion filed August 1, 1905.

GEORGE K. BEASLEY, for appellants.

OLIVER R. BARRETT, for appellee.

MR. JUSTICE FARMER delivered the opinion of the court.

This is an appeal from a judgment of the court below in favor of appellee against appellant, Henry C. Gibson, and his sureties on his official bond as constable. The facts out of which the litigation arose are as follows: On March 8th, 1904, Grimm Brothers sued out an attachment before a justice of the peace against A. F. Slonneger and his wife. The writ was returnable March 22nd, and by virtue of it the

constable to whom it was delivered, Gibson, levied on the personal property of the defendants on the same day he received the writ. The return of the constable, after describing the property levied upon, stated he had read the writ to Mrs. A. F. Slonneger, that A. F. Slonneger was not found, and that he had delivered a true copy of it to Mrs. A. F. Slonneger, a member of the family over the age of twelve years, for said A. F. Slonneger, and had informed her of the contents of the writ. On the return day, March 22nd, A. F. Slonneger appeared before the justice of the peace who issued the writ, entered his appearance, applied for and secured a change of venue to another justice of the peace, where the cause was continued to March 25th. On that day it was again continued to March 29th when a trial was had, resulting in a judgment against the Slonnegers for $105 and costs. The court also found the issues on the attachment against defendants, and ordered that plaintiff have a special execution against the property attached. On the 31st day of March, A. F. Slonneger claiming the property levied on as his property, and desiring to avail himself of the benefits of his exemptions, delivered to the constable having the writ a schedule. No notice of this schedule was taken by the constable, and no appraisers were appointed to value the property. On the 13th day of April, a special execution was issued by the justice who rendered the judgment, and delivered to constable Gibson, who served Slonneger with notice of it on the 19th of the same month. On the same day A. F. Slonneger delivered to the constable another schedule, claiming the property under the exemption laws. No attention was paid by the constable to this schedule, no appraisers were appointed to value the property and on the 30th day of April, the property consisting of a piano, piano stool, piano cover, stove, dresser and mirror were sold by the constable at public sale under the special execution for the sum of $129.20. Thereafter this suit was brought by A. F. Slonneger on the bond of the constable. A verdict was rendered in favor of plaintiff, assessing the damages at $100 upon which judg-

ment in debt was rendered on the penalty of the bond to be discharged upon payment of the damages, from which this appeal is prosecuted.

The contention of appellants is that by section 2 of the Act concerning Exemptions of Personal Property, Slonneger was required to present his schedule within ten days after service of the writ of attachment, and if he failed to do so, he was thereafter barred from claiming the benefits of the law concerning exemptions. The act referred to required that "Whenever any debtor against whom an execution, writ of attachment or distress warrant has been issued, desires to avail himself of the benefit of this act, he shall, within ten days after 'a copy' of the execution, attachment or distress warrant is served upon him in the same manner as summonses are served in chancery, such copies of execution, attachment or distress warrant to have endorsed thereon a notice signed by the officer having such writ, notifying the debtor that he must file a schedule of his property within ten days from the service thereof in order to claim his exemption under this act, whereupon the debtor shall make a schedule of all his personal property of every kind and character," etc. Counsel refer us to no case where this precise question has been before our Supreme or Appellate courts and say it has not before been presented to an appellate tribunal in this State. Assuming, therefore, that the question has not been before determined, we are left to a construction of the meaning of the statute unaided by precedent. In the absence of authority, we cannot adopt the construction placed upon this statute by counsel for appellants. The office of an attachment is to seize and hold the property of the defendant until the rights of the parties are determined in the suit in which the writ is issued. The statute gives the defendant the right, if he shall desire to have the property levied upon released, to present a schedule within ten days, claiming it as exempt. But we do not construe the statute to mean that if he fails to avail himself of the right to have the property released from the attachment, he is there-

after precluded from presenting a schedule and claiming it after a judgment is rendered against him, execution issued thereon and he is served with notice thereof. He may rely upon being able to defeat the suit and leave his property until that is determined, in the possession of the officer having the writ, The property here could not have been sold by virtue of the attachment. Before a sale of it could be lawfully made, the issue on the attachment must have been determined against the defendant and a special execution awarded directing its sale. After that is done, we are of opinion the debtor had a right to claim the benefits of the exemption laws by presenting his schedule to the officer within ten days after service of the execution upon him. It is by virtue of the execution and not the attachment that the property is sold, and he cannot be deprived of the benefit of his exemptions because he did not choose to procure the release of the property from the attachment by presenting his schedule within ten days after the service of that writ. Statutes exempting property from levy and sale for the payment of debts, are not to be strictly construed but should receive such construction as will carry out the obvious purpose of the legislature in enacting them, to protect the debtor. Finlen v. Howard, 126 Ill. 259; Washburn v. Goodheart, 88 Ill. 229; McClellan v. Powell, 109 Ill. App. 222.

There is also an additional reason why we think appellee should not be denied the privilege of claiming his exemptions in this case. It will be observed the debtor is given the right to schedule within ten days after a copy of the process " is served upon him in the same manner as summonses are served in chancery." The return in this case is that A. F. Slonneger was not found and that a copy of the writ was delivered to Mrs. A. F. Slonneger, a member of the family over twelve years of age, for him, and she informed of the contents of it. Section 11, chapter 22, Hurd's Revised Statutes, requires that in the service of a summons in chancery by copy, the copy shall be left at the usual place of abode, with some person of the family,

etc. It is not stated in the return here that the copy was left at Slonneger's usual place of abode. It was held in Piggott v. Snell, 59 Ill. 106, that the omission to state the copy was left at the defendant's usual place of abode made the return defective, and it was said, " According to the . decisions of this court, in serving process by copy, the return of the officer must show a strict compliance with the statute or the court will not obtain jurisdiction of the person," citing several cases. It would seem then jurisdiction of the person of Mr. Slonneger was not obtained until he entered his appearance on the return day, which was March 22nd, and within ten days from that date he did present to the constable a schedule in which he claimed the property as exempt. The statute also requires the copy to have " endorsed thereon a notice *signed by the officer* having such writ, notifying the debtor that he must file a schedule of his property within ten days." The copy of the attachment writ in the record before us contains a printed form of notice to the debtor, but it is not signed by the constable. We are of opinion, therefore, that independent of the interpretation we have placed upon the statute, what appellee did in the way of claiming his exemptions was sufficient to entitle him to them.

It is also contended by appellee that the piano, piano stool and cover were shown by the evidence to have been the property of Mrs. Slonneger. We do not so understand the testimony. Appellee was working for wages and was receiving $14 a week. He and his wife were also keeping a boarding house, which was managed by Mrs. Slonneger. With his consent, she purchased the piano, to be paid for in installments. Mrs. Slonneger attended to the selection and purchase of the piano and executed her notes therefor, and probably secured them by a chattel mortgage. Appellee testified he did not know whether she gave a mortgage or not. According to the testimony all appellee earned in wages and all that was made from keeping the boarding house went to pay for purchases made by and for the family. Appellee's wages as well as receipts from the boarding

house went to make payments on the piano. He testified
he authorized his wife to buy it, and gave her money to
make payments thereon. Usually Mrs. Slonneger collected
the board money, but some times it was paid to appellee
and he testified he gave the money thus received as well as
his wages to his wife. It is clear appellee and his wife were
cooperating together in making the living. Mrs. Slonneger
was not engaged in any separate business on her own ac-
count, and we think the proof abundantly shows the piano,
piano stool and cover were the property of appellee.

Appellee has assigned as a cross-error the giving of the
following instruction for appellants: "The court instructs
the jury, that where a sale of goods at public sale is made
by an officer, and no evidence is shown of any attempt to
cry down or lower the price of said goods, the presump-
tion of law is, that the price brought is the fair cash value
of such goods and articles at the date and time they were
sold." We are of opinion this cross-error is well assigned.
It was held in Roberts v. Dunn, 71 Ill. 46, that the price
brought by the property at a sheriff's sale may be evidence
tending to prove the value, but it is not conclusive nor is it
the best evidence. The great weight of the evidence here
shows the property to have been worth almost twice as
much as it brought at the sale. While the constable testi-
fied he conducted the sale fairly and made no effort to pre-
vent the property from bringing its full value but tried to
get all he could for it, it is also true appellee had endea-
vored to prevent the sale of the property by claiming it as
exempt under the law. To what extent this may have af-
fected the price the property sold for we cannot know, but
it appears that for some reason it sold for about one-half
its value. That this instruction materially influenced the
jury in fixing the amount of the damages also seems prob-
able. We are of opinion the instruction was erroneous
and highly prejudicial to appellee, and for the error in giv-
ing it, the judgment is reversed and the cause remanded, at
the costs of appellants.

*Reversed and remanded.*