In re Leonard E. TEMPLETON, Jr., and Larrilee H. Templeton, Debtors.

Bankruptcy No. 92 B 04870.

United States Bankruptcy Court, N.D. Illinois, E.D.

Oct. 15, 1992.

Allan S. Brilliant, Holleb & Coff, Chicago, Ill., for Leonard E. Templeton, Jr. and Larrilee H. Templeton, debtors.

C. John Ruddy, Truemper, Hollingsworth, Wojtecki Courtin & Ruddy, Aurora, Ill., for Regina Sukosd.

Wayne F. Weiler, Aurora, Ill., for Regina Sukosd.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on claims of exemption under Federal Rule of Bankruptcy Procedure 4003(a), of Leonard E. Templeton, Jr. and Larrilee H. Templeton (the "Debtors") for two custodial individual retirement accounts ("IRAs") pursuant to 11 U.S.C. § 522(b)(1) and Ill.Rev. Stat. ch. 110, para. 12–1006(a) and (b)(2) (1989), and objections filed thereto by one of their creditors, Regina Sukosd (the "Creditor") pursuant to Bankruptcy Rule 4003(b). For the reasons set forth herein, the Court having considered the pleadings and the evidence adduced at trial, sustains the Debtors' claims of exemption and denies the Creditor's objections thereto.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain these claims of exemption pursuant to 28 U.S.C. § 1334 and General Rule 2.33(a) of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

## II. FACTS AND BACKGROUND

Most material facts of this matter are not in dispute. The Debtor, Leonard E. Templeton, established his custodial (not trusteed and not employer sponsored) IRA by an adoption agreement dated June 16, 1989. Debtors' Exhibit No. 2. His spouse, Larrilee H. Templeton, established her similar custodial IRA by adoption agreement dated July 11, 1989. *Id.* Each Debtor retained the right to direct the investment and reinvestment of contributions to their respective accounts, and appointed Kidder Peabody & Co., Inc., Leonard's current employer, as the brokerage firm to act and execute their directions. Leonard's IRA was funded with a rollover of liquidated and other proceeds from assets previously held in other retirement plans of which he was a beneficiary arising from his previous employment.

Thereafter, on August 29, 1989, John Sukosd was injured as a result of a fall sustained on the Debtors' premises. His fall (and subsequent death) led to a personal injury and wrongful death action ultimately prosecuted by his spouse, Regina Sukosd. Same was filed on September 14, 1989, in the Circuit Court for the Sixteenth Judicial Circuit, Kane County, Illinois. Sukosd Exhibit Nos. 3 and 4. After trial by jury, a verdict was returned in her favor against the Debtors in the amount of $3,000,000.00 on which judgment was entered on February 14, 1992.

The Debtors filed their Chapter 11 petition on March 3, 1992. Among the listed assets on Schedule B, Leonard listed his IRA, then valued in the sum of $262,956.00. Debtors' Exhibit No. 1. Larrilee Templeton scheduled her IRA on Schedule B and valued it at $13,084.00. *Id.* Among other assets claimed exempt, the Debtors scheduled both IRAs on their Schedule C pursuant to the provisions of Ill.Rev.Stat. ch. 110, para. 12–1006(b)(2) [sic]. Sukosd Exhibit Nos. 6 and 7; Debtors' Exhibit No. 1.

On March 31, 1992, the Creditor timely filed her objections to the IRA exemptions claimed prior to the meeting of creditors required by 11 U.S.C. § 341. After notice pursuant to Bankruptcy Rule 4003(c), the Court held a trial on September 10, 1992. Thereafter, the matter was taken under advisement.

## III. ARGUMENTS OF THE PARTIES

The Creditor has objected to the claimed IRA exemptions on the following principal grounds: (1) the IRAs are not true spendthrift trusts, and therefore not exempt under paragraph 12–1006; (2) they should not be found exempt because the amounts involved are so great that they provide a shelter beyond the safety net intended by the Illinois General Assembly; and (3) the good faith requirements for exemption under paragraph 12–1006 are not met because the Debtors engaged in excessive transactions or "churning" the accounts, thereby disqualifying same under the applicable provisions of the Internal Revenue Code.

The Debtors' essential arguments are: (1) the exemptions claimed should be sustained through application of the plain meaning doctrine in the proper construction of the text of paragraph 12–1006 in accordance with relevant judicial gloss; (2) IRAs need not be spendthrift trusts to be exempt; (3) the subject IRAs were intended to qualify in good faith as retirement plans under then relevant provisions of the Internal Revenue Code, and there has been no "churning" or excessive transactions among the investments held in the accounts; and (4) alternatively, if the Court were to sustain the objections to the exemptions claimed, the provisions of paragraph 12–1006(c) conclusively presume that the IRAs are spendthrift trusts, and hence, they are not property of the bankruptcy estate under 11 U.S.C. § 541(c)(2).

## IV. APPLICABLE STANDARDS FOR CONTESTED CLAIMS OF EXEMPTION UNDER BANKRUPTCY AND ILLINOIS LAW

■ Federal Rule of Bankruptcy Procedure 4003(c) governs hearings on disputed claims of exemptions and objections thereto. The time limits of Bankruptcy Rule 4003(b) for filing objections to claims of exemption are to be strictly construed and applied because of the provisions of 11

U.S.C. § 522(*l*). It effectively provides that property claimed exempt is exempt unless a party in interest timely objects. *Taylor v. Freeland & Kronz,* — U.S. ——, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). The objecting party under Rule 4003(c) has the burden of proving that the exemptions are not properly claimed. Other courts have seemingly shifted the burden of proof to the debtor, notwithstanding the text of Bankruptcy Rule 4003(c). *See In re Russell,* 60 B.R. 190, 193–194 (Bankr.M.D.Fla. 1986); *In re Patterson,* 128 B.R. 737, 740 (Bankr.W.D.Tex.1991). The standard of required proof is presumably a preponderance of the evidence. *See* Salerno and Sirower, *Bankruptcy Litigation and Practice: A Practitioner's Guide,* Section 7.13(N) (1991). *See also In re Hollar,* 79 B.R. 294 (Bankr.S.D.Ohio 1987); *In re Schlee,* 60 B.R. 524 (Bankr.D.Minn.1986).

■ Under the Bankruptcy Code, either the applicable state or the federal exemptions may be selected pursuant to Section 522 unless a state chooses to "opt out" of the federal exemption scheme. 11 U.S.C. § 522(b)(1). The Illinois General Assembly "opted out" by enacting Ill.Rev.Stat. ch. 110, para. 12–1201. As a result, residents of Illinois are prohibited from using the federal exemptions provided in Section 522(d) of the Bankruptcy Code, except as may be otherwise permitted under the laws of Illinois. *See In re Johnson,* 53 B.R. 919 (Bankr.N.D.Ill.1985), *reconsideration denied,* 57 B.R. 635 (Bankr.N.D.Ill.1986); *In re DiPiazza,* 29 B.R. 916 (Bankr.N.D.Ill. 1983); *In re Cullen,* 21 B.R. 118 (Bankr. S.D.Ill.1982); *In re Marriage of Logston,* 103 Ill.2d 266, 281, 82 Ill.Dec. 633, 639, 469 N.E.2d 167, 173 (1984).

■ Both federal and state courts in Illinois have consistently held that personal property exemption statutes should be liberally construed in order to carry out the legislature's purpose in enacting them—to protect debtors. *In re Barker,* 768 F.2d 191, 196 (7th Cir.1985); *In re Schriar,* 284 F.2d 471, 473–474 (7th Cir.1960); *In re Feilchenfeld,* 99 F.2d 710, 711 (7th Cir. 1938); *Finlen v. Howard,* 126 Ill. 259, 262, 18 N.E. 560, 561 (1888); *Washburn v.*

*Goodheart,* 88 Ill. 229, 231 (1878). *Barker* noted that when an exemption statute might be interpreted favorably or unfavorably with regard to a debtor, federal courts should interpret the statute in a manner that favors the debtor. 768 F.2d at 196.

Illinois courts follow the principle that the primary goal of statutory construction is to ascertain and effectuate the legislature's intent. *Logston,* 103 Ill.2d at 277, 82 Ill.Dec. at 637, 469 N.E.2d at 171. The Court should first examine the statutory language itself. If the Court finds that the language is clear and ambiguous, then the Court should give that language its effect and not resort to extrinsic aids in construing the statute. When a statute is subject to various interpretations, however, the Court should look to other sources for evidence of the legislative intent such as the statute's legislative history, the reason for the statute's enactment, the circumstances that led to its adoption, and the ends that the legislature sought to achieve. *Logston,* 103 Ill.2d at 277–279, 82 Ill.Dec. at 637–638, 469 N.E.2d at 171–172; *Barker,* 768 F.2d at 194–195.

This approach to statutory construction with regard to bankruptcy issues has been followed in a number of recent United States Supreme Court decisions applying the "plain meaning doctrine." *See, e.g., Board of Governors of Federal Reserve System v. MCorp. Financial, Inc.,* — U.S. ——, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991) (plain meaning doctrine applied in construction of 12 U.S.C. § 1818(i)(1)); *Union Bank v. Wolas,* — U.S. ——, 112 S.Ct. 527, 116 L.Ed.2d 514 (1991), (doctrine applied to 11 U.S.C. § 547(c)(2)); *United States v. Nordic Village, Inc.,* — U.S. ——, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) (doctrine applied in construction of 11 U.S.C. § 106(c)); *Connecticut Nat. Bank v. Germain,* — U.S. ——, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (doctrine applied to construe 28 U.S.C. § 158(d)); *Toibb v. Radloff,* — U.S. ——, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991) (doctrine applied in construing 11 U.S.C. § 109)); *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (doc-

trine applied in construing 11 U.S.C. § 506(b)). The Court is bound to follow the legislative discretion of the Illinois General Assembly in construing the statute at bar, in accord with the plain meaning of the legislative text, in light of the above referenced rules of construction.

The full text of paragraph 12–1006 presently provides:

*Exemption for retirement plans.*

(a) *A debtor's interest in or right, whether vested or not, to the assets held in* or to receive pensions, annuities, benefits, distributions, refunds of contributions, or other payments under *a retirement plan is exempt* from judgment, attachment, execution, distress for rent, and seizure for the satisfaction of debts *if the plan* (i) *is intended in good faith to qualify as a retirement plan under applicable provisions of the Internal Revenue Code of 1986,* as now or hereafter amended, or (ii) is a public employee pension plan created under the Illinois Pension Code, as now or hereafter amended.

(b) *"Retirement plan" includes* the following:

(1) a stock bonus, pension, profit sharing, annuity, or similar plan or arrangement, including a retirement plan for self-employed individuals or a simplified employee pension plan;

(2) a government or church retirement plan or contract;

(3) an individual retirement annuity or *individual retirement account;* and

(4) a public employee pension plan created under the Illinois Pension Code, as now or hereafter amended.

(c) *A retirement plan* that is (i) intended in good faith to qualify as a retirement plan under the applicable provisions of the Internal Revenue Code of 1986, as now or hereafter amended, or (ii) a public employee pension plan created under the Illinois Pension Code, as now or hereafter amended, *is conclusively presumed to be a spendthrift trust under the law of Illinois.*

(d) This Section applies to interests in retirement plans held by debtors subject to bankruptcy, judicial, administrative or other proceedings pending on or filed after August 30, 1989.

Ill.Rev.Stat. ch. 110, para. 12–1006 (1989) (emphasis added).

Paragraph 12–1006 was added to the Illinois Code of Civil Procedure by Public Act 86–393 of the Illinois General Assembly with an effective date of August 30, 1989. It was subsequently amended by Public Act 86–1329, effective January 1, 1991. The statute appears to be a legislative response to a series of bankruptcy court decisions finding IRAs and other kinds of retirement plans not exempt under the former provisions of Ill.Rev.Stat. ch. 110, para. 12–1001(g)(5). *See, e.g., In re Kitson,* 43 B.R. 589 (Bankr.C.D.Ill.1984) (IRAs not qualified as exempt under former paragraph 12–1001(g)(5)).

A number of Illinois bankruptcy courts have taken various approaches in construing portions of paragraph 12–1006. The retroactive aspect of paragraph 12–1006(d) was held ineffective and violative of the Supremacy Clause of the United States Constitution because conflicting with the temporal language of Section 522(b)(2)(A) of the Bankruptcy Code. *See In re Summers,* 108 B.R. 200 (Bankr.S.D.Ill.1989). Section 522(b)(2)(A) requires that exemptions must be determined either under federal or state law then applicable on the date that the bankruptcy petition was filed. In holding that only extant exemptions on the date of filing were applicable, and other exemptions could not be later legislated with a retroactive application, *Summers* noted that subparagraph (d) was severable from the remainder of paragraph 12–1006. *Id.* at 204.

Next, *In re Smith,* 115 B.R. 144 (Bankr. C.D.Ill.1990) held that paragraph 12–1006(c), which establishes a conclusive presumption that defined retirement plans are spendthrift trusts, was preempted by Section 522(b)(2) of the Bankruptcy Code. *In re Balay,* 113 B.R. 429 (Bankr.N.D.Ill.1990) also discussed the conclusive presumption contained in subparagraph (c) of paragraph

12–1006 and would not retroactively apply the claimed exemption subparagraph (d). A similar result was reached in *In re Peacock*, 119 B.R. 605 (Bankr.N.D.Ill.1990), *aff'd*, 125 B.R. 526 (N.D.Ill.1991). *Peacock* held that a debtor could not take advantage of the exemption provided by paragraph 12–1006 because it was not enacted until nearly one year after the filing of the bankruptcy petition.

Additionally, *In re Wimmer*, 121 B.R. 539 (Bankr.C.D.Ill.1990), *aff'd*, 129 B.R. 563 (C.D.Ill.1991) held that the conclusive presumption in paragraph 12–1006(c) was invalid under the Supremacy Clause. In contrast, another bankruptcy judge from the Central District of Illinois upheld the conclusive presumption of paragraph 12–1006(c) in *In re Block*, 121 B.R. 810 (Bankr. C.D.Ill.1990). *Block* held that retirement plans intended in good faith to qualify under the Internal Revenue Code are spendthrift trusts under Illinois law as provided by paragraph 12–1006(c), thus, same are excluded from the bankruptcy estate under 11 U.S.C. § 541(c)(2). *Id.* at 813.

ERISA does not preempt paragraph 12–1006 for individual retirement accounts because the retirement plans subject to ERISA do not encompass IRAs. *In re Kazi*, 125 B.R. 981 (Bankr.S.D.Ill.1991). *Kazi* also followed *Wimmer* noting that the conclusive presumption of paragraph 12–1006 frustrates the intent underlying section 541(c)(2), and is thus invalid under the Supremacy Clause. *Id.* at 986. Recently, *In re Brilley*, 148 B.R. 39 (Bankr. C.D.Ill.1992) overruled objections to a claimed IRA exemption on grounds that paragraph 12–1006 unconstitutionally impairs contracts or is unconstitutional because it attempts to define a spendthrift trust in an impermissible manner. *Brilley* cited *Wimmer* noting that an IRA does not contain the necessary anti-assignment nor non-alienation provisions that lends support for why spendthrift trusts are excluded from the property of the estate. *Id.* at 41.

IRAs are fundamentally distinct in many ways from ERISA type retirement plans. The Seventh Circuit has stated that an independent retirement account that was not established or maintained by a debtor's employer could not be an ERISA type employee benefit plan and Illinois law exempting the account from attachment was not preempted by ERISA. *Reliance ·Ins. v. Zeigler*, 938 F.2d 781 (7th Cir.1991). The Creditor's argument on this preemption issue is therefore rejected, and all cited cases involving ERISA covered plans are thus inapposite and will not be further discussed.

## V. DISCUSSION

■ After careful review of paragraph 12–1006(a)(i) and (b)(3), in light of the above discussed judicial gloss and limited legislative history, the Court concludes that the Debtors' claims of exemption should be sustained, notwithstanding a probable typographical and proofreading reference on Schedule C to subparagraph (b)(2). The Creditor's objections are overruled and denied.

Paragraph 12–1006(a)(i) and (b)(3) makes it clear that all of a debtor's interest in the assets held under such retirement plan is exempt as long as the IRA was intended in good faith to qualify under the applicable provisions of the Internal Revenue Code. These IRAs are defined "retirement plans" under subsection (b)(3), exempt under subparagraph (a) because they are undisputedly individual retirement accounts (not government or church retirement plans or contracts covered under (b)(2)). They are exempt under the plain meaning of the above emphasized unambiguous terms of subparagraphs (a)(i) and (b)(3). Both IRAs were established in 1989 with the intent that they qualify as IRAs under the Internal Revenue Code. Nothing more is required to fit within the parameters of the exemption created by paragraph 12–1006(a) and (b)(3). The problems in the text of paragraph 12–1006(c) and (d) do not impact on the severable text of subparagraphs (a) and (b).

The principal argument of the Creditor is that because these IRAs are not true spendthrift trusts, they are not properly exempt. It is true that these IRA's are not

traditional Illinois spendthrift trusts. From the language of the adoption agreements, there is no independent trustee holding assets in the accounts. In addition, there are no restrictions on directions by the Debtors with regard to investment, or withdrawals and reinvestment of contributions made by them to the accounts. Moreover, both IRAs were self settled by the Debtors. Under well settled Illinois case law, an IRA is not a true spendthrift trust, whether or not it is a trusteed or custodial IRA, because in a traditional spendthrift trust, the settlor of the trust cannot establish the trust for his or her own benefit. Furthermore, the beneficiary of a true spendthrift trust cannot alienate his interest in the trust or exercise dominion or control over the distribution or termination of the trust. *See, e.g., In re Silldorff,* 96 B.R. 859, 864 (C.D.Ill.1989) (collecting cases).

What is critical for purposes of the statute at bar is not whether these IRAs are traditional spendthrift trusts, but whether the statutory language utilized in subparagraphs (a) and (b) of paragraph 12–1006 somehow requires those retirement plans to be traditional spendthrift trusts in order to qualify for the exemption. No such condition is expressly or impliedly contained within the statutory text. The only condition applicable to these IRAs is that contained in subparagraph (a)(i) which merely requires that these IRAs were intended in "good faith" to qualify as retirement plans under the then applicable provisions of the Internal Revenue Code of 1986, as amended. It is the intent for such retirement plans to qualify under the Internal Revenue Code in good faith that is critical, not a debtor's subjective intent in sheltering from creditors' claims their contributions made to, and earnings derived from assets in such retirement plans or subsequent activity with respect to investment of the IRA proceeds. The Creditor mistakenly mixes the apples of her 11 U.S.C. §§ 1112(b) and 1129(a)(3) good faith challenges to the petition and the Chapter 11 plan filed by the Debtors, with the oranges of a good faith challenge to these claims of exemption. The probable subjec-tive intent of the Debtors to maximize the value of their sheltered IRAs now aggregately valued at well over a quarter of a million dollars, is not a disqualifying lack of good faith.

There was no evidence adduced at trial that the Debtors established or funded these IRAs to be anything other than qualified IRAs under the Internal Revenue Code. The Creditor has not met her burden of proof under Bankruptcy Rule 4003(c). There is no requirement in paragraph 12–1006 that for the exemption to be applicable, a favorable determination from the Internal Revenue Service is first required as argued by the Creditor. To the contrary, the expert opinion testimony adduced by Debtors at trial was uncontroverted. It indicated that the investment securities purchased were made pursuant to the terms of the IRAs, and the Debtors' reinvestment of contributions and account proceeds were not the equivalent of excessive transactions that would constitute improper "churning" of their IRAs. Moreover, the fact that Debtor Leonard Templeton, is an employee of Kidder Peabody & Co., Inc., the authorized brokerage firm under both IRAs, and both he and that firm received transactional fees and commissions for such trading in the securities in which the account proceeds were invested, does not destroy the "exemptability" of the accounts under paragraph 12–1006, whether not such actions may affect the taxable status of the IRAs. The present tax exempt status of the IRAs is not material to the issue of whether or not they are exempt under paragraph 12–1006.

The Court has also considered and applied the principle that statutory construction is a "holistic" endeavor. *United Sav. Asso. v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). There is at least a latent ambiguity in the juxtaposition of subparagraphs (a) and (b) with (c). The apparent sparse legislative history consisting of portions of the House and Senate debates shows no small divergence of opinion expressed by individual legislators. *See* House Debates on June 30, 1989, and

Senate Debates on July 1, 1989, Public Act 86–393. Notwithstanding the individual expressions of concern by several legislators, the operative text of paragraph 12–1006(a) contains no dollar limit or other monetary cap. The unambiguous text of paragraph 12–1006(a) fully exempts both Debtors' interests in all the assets held in the subject IRAs. Moreover, these portions of the text are severable from the following provisions of subparagraphs (c) and (d) held invalid by other courts. It is not for this Court to judicially impose limits not legislated on exemptions, notwithstanding the substantial value of these IRAs. This result is consistent with the most recent decision of the United States Supreme Court indicating its support for protection of pension benefits. *See Patterson v. Shumate,* — U.S. ——, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). The result is also consistent with application of the plain meaning or plain language doctrine employed by the Supreme Court in *Patterson* and its other recent pronouncements on bankruptcy issues.

■ The last issue to address is the Debtors' alternate contention and defense that the IRAs are excluded from the bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2) because of the "conclusive presumption" of paragraph 12–1006(c). Under the provisions of Bankruptcy Rule 1009(a), the Debtors have a right to amend their schedules at any time before the case is closed. Although not necessary to the result here, the Court agrees with the conclusion in *Wimmer,* and *Brilley,* and respectfully disagrees with the result in *Block.* Paragraph 12–1006(c) is a clear misuse of a conclusive presumption. In the colorful words of Judge Altenberger, "Illinois has sought to make, by means of a conclusive presumption, a goose into a duck, despite the fact that it does not walk, sound or look much like a duck." *Wimmer,* 121 B.R. at 543. Because by its very nature an IRA does not contain the requisite characteristics of a traditional spendthrift trust, the Illinois legislature may not employ the sophistry of a conclusive presumption to make it effectively so.

The fundamental differences between IRAs and ERISA covered retirement plans are set forth in *In re Herbert,* 140 B.R. 174 (Bankr.N.D.Ohio 1992). IRAs, in essence, do not contain the same anti-assignation and non-alienation provisions as required under ERISA plans. *Id.* at 176. They are self-settled and subject to almost complete control by the debtors who credit them. Therefore, they are not properly excluded from a debtor's estate by any federal non-bankruptcy law. *See also Velis v. Kardanis,* 949 F.2d 78, 82 (3rd Cir.1991). In this case, as shown by the adoption agreements (Debtors' Exhibit No. 2), the Debtors possess exclusive and total control over the contributions to, investments of, and distribution or termination of these IRAs. They are not traditional spendthrift trusts under Illinois common law.

The Creditor cites the following additional authorities in support of her contentions: *In re Vanmeter,* 137 B.R. 908 (Bankr.N.D.Ind.1992); *In re Orlebeke,* 141 B.R. 569 (Bankr.S.D.N.Y.1992); *In re Hennessey,* 135 B.R. 711 (Bankr.D.Mass.1992). None of those cases are controlling because they respectively involve application of Indiana, New York, and Massachusetts exemption statutes textually distinct from the Illinois statute at bar. Moreover, the provisions of paragraph 12–1006(c) are also at variance with the provisions of the Indiana statute construed in *In re LeFeber,* 906 F.2d 330 (7th Cir.1990). *LeFeber,* therefore, is not directly on point or controlling in this matter.

The instant Illinois statute substantially deviates from the prior Illinois common law requirements for spendthrift trusts. The Court, therefore concludes that these IRAs are not true spendthrift trusts just because the Illinois General Assembly would have them so conclusively presumed. As noted in *Balay,* Illinois has created a statute which anomalously both exempts under paragraph 12–1006(a), yet simultaneously purports to exclude retirement plans from the Debtors' bankruptcy estate via paragraph 12–1006(c) through 11 U.S.C. § 541(c)(2). *Balay,* 113 B.R. at 441.

The result is an inartfully drafted statute which is flawed for at least Bankruptcy Code purposes. Logic dictates the result that an asset is either part of a bankruptcy estate, and perhaps exempt therein, or alternatively, it is not a part of the bankruptcy estate, in which case, the asset is not subject to administration before the bankruptcy court. It is illogical at best, and poor draftsmanship at least, to produce a statute in which one section makes something part of a bankruptcy estate, although exempt, yet effectively excludes it from the estate in another section. *See generally* Falk, *Qualified Plans and IRAs In the Bankruptcy Estate: Why the Supreme Court May Decide Very Little in Shumate*, 4 BNA *Bankruptcy Law Reporter* 289 (March 12, 1992) (collecting cases). The flaw and ambiguity resulting from the text of paragraph 12–1006(a) and (c) is an attempt to answer both issues in the affirmative. The better view, and more logical result in conformance with the above precedents, is to hold the subject IRAs are part of this bankruptcy estate which both Debtors may properly claim exempt.

## VI.   CONCLUSION

For the foregoing reasons, the Creditor's objections to the Debtors' claimed exemption in their IRA accounts are overruled and denied, and the Debtors' claims of exemption are sustained.

This Opinion serves as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.